# IN THE SUPREME COURT OF IOWA

No. 111 / 06–0051

Filed July 18, 2008

**STATE OF IOWA,**

Appellee,

vs.

**BRADLEY DALE SHIPLEY,**

Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Des Moines County, Michael G. Dieterich, District Associate Judge.

The State seeks further review of the court of appeals' decision, which held the admission of the defendant's certified driving record violated the Confrontation Clause. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Heidi D. Van Winkle and Tyron Rogers, Assistant County Attorneys, for appellant.

Richard A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellee.

**APPEL, Justice.**

In this case, we are presented with an array of issues arising out of the admission of a certified abstract of the defendant's driving record, which was created and maintained by the Iowa Department of Transportation (IDOT). The challenged abstract showed that the defendant's driving privileges were revoked at the time of his arrest. The defendant maintains that admission of the abstract was in error as the record failed to meet statutory requirements for its admission and violated his rights to due process and confrontation. In addition, the defendant claims the admission of a police officer's testimony regarding his driving status at the time of arrest was improper on hearsay grounds.

The district court convicted the defendant of the criminal offense of driving under revocation. The court of appeals reversed the conviction on Confrontation Clause grounds. For the reasons expressed below, the decision of the court of appeals is vacated and the judgment of the district court is affirmed.

## I. Factual and Procedural History.

In December 2004 Kenneth Zahner, a Burlington police officer, observed a moving construction vehicle bearing a "Shipley Construction" sign. The police officer further recognized the driver as the defendant Bradley Dale Shipley, whom he believed did not have a valid driver's license. After confirming with dispatch that Shipley's license had been revoked, the police officer stopped the vehicle and asked Shipley about his driving status. Shipley claimed to be driving under a valid work permit but could not produce it. The officer again consulted with dispatch, and was informed that Shipley's work permit had expired six months earlier in June 2004. The police officer then arrested Shipley for driving under revocation contrary to Iowa Code section 321J.21 (2003).

Prior to trial, the State disclosed in its minutes of testimony that it intended to call Terry L. Dillinger, the director of the Office of Driver's Services for the IDOT, as a witness to testify regarding information contained in Shipley's "certified driving record." The State also disclosed in the minutes an intention to offer Shipley's "certified driving record" into evidence. Shipley filed a timely motion in limine to exclude admission of his driving record on several grounds.

First, Shipley argued that neither the trial information nor the minutes of testimony included a copy of the certified driving record or indicated its contents. Shipley claimed that this lack of disclosure violated the fair notice requirements of Iowa Rule of Criminal Procedure 2.5(3) and thus should preclude the State from offering the record at trial. In the alternative, Shipley argued the lack of notice of the contents of the certified driving record violated his state and federal constitutional right to due process.

Second, Shipley argued that although the certified driving record was not available at the time of the motion, he anticipated that it would bear a red-stamped endorsement without any human signature. As a result, Shipley claimed that admission of the document would violate the Iowa Code and various rules of evidence.

Third, Shipley challenged admission of any testimony of the arresting officer regarding the status of his license. Shipley argued that the arresting officer did not have personal knowledge of the revocation, and as a result, any testimony would be hearsay under Iowa Rule of Evidence 5.803(8)(B)(*iii*). The trial court overruled the motion in limine. Shipley reasserted these objections at trial.

At trial, Shipley objected when the State offered into evidence a certified abstract of his driving record. The two-page abstract contained the following statement stamped upon both pages in red ink.

IN COMPLIANCE WITH SECTION 321A.3, (IOWA CODE) IT IS HEREBY CERTIFIED THAT THIS IS A TRUE AND CORRECT ABSTRACT OF THE OPERATING RECORD ON FILE IN THE DEPARTMENT OF TRANSPORTATION. IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED THE SEAL OF SAID DEPARTMENT AT DES MOINES, IOWA THIS DATE:

DEC. 27 2004

The stamped signature of Terry L. Dillinger appears beneath the above recitation with the words "OFFICE OF DRIVER SERVICES" below the signature.

Shipley challenged the lack of a human signature and the use of a seal on the document as violative of his Sixth Amendment right to confrontation. The district court overruled the motion and the certified abstract was admitted into evidence. After the close of evidence, the district court found Shipley guilty of driving while his license was revoked.

Shipley filed a timely notice of appeal, and we transferred the case to the court of appeals. The court of appeals reversed Shipley's conviction. While the court rejected Shipley's statutory challenges to the admission of the driving record, it held that the record's admission violated the Confrontation Clause of the United States Constitution. We granted further review.

## II. Standard of Review.

We review de novo claims involving the Confrontation Clause. *State v. Bentley*, 739 N.W.2d 296, 297 (Iowa 2007). On questions involving the correct interpretation of state law, our review is for correction of errors at law. *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000). We review the

admission of claimed hearsay evidence for correction of errors at law. *State v. Musser*, 721 N.W.2d 734, 751 (Iowa 2006).

### III. Statutory and Procedural Challenges.

### A. Fair Notice Under Iowa Rule of Criminal Procedure 2.5(3).

Iowa Rule of Criminal Procedure 2.5(3) provides that upon the filing of a trial information, the State must also file minutes of evidence, listing the names of all witnesses and a full and fair statement of the witnesses' expected testimony. Iowa R. Crim. P. 2.5(3). The State listed Terry Dillinger as a witness to authenticate the "certified driving record" in the minutes of testimony. Although listed as a prospective witness, Dillinger did not testify at trial. Shipley asserts that by offering the certified abstract of his driving record without Dillinger's testimony, the evidence was "outside the minutes" and should not have been admitted. Shipley further claims that by not attaching a copy of the record, he did not have fair notice of its contents.

The State counters that the minutes of testimony advised Shipley that it intended "to introduce into evidence at trial a copy of the Certified Driving Record obtained from the Iowa Department of Transportation." Further, a police report attached to the minutes indicated that information received by Officer Zahner relayed that dispatch "ran Shipley's driver's license" and that "it came back revoked" on June 21, 2004, for a period of two years for an OWI test failure. The State thus contends that Shipley had both fair notice of the contents of the certified abstract and that it intended to offer the certified abstract into evidence.

We agree with the State. Shipley was explicitly placed on notice that the State intended to offer his driving record into evidence at trial. Although the State listed Dillinger as a witness to lay foundation for the record, the State's decision to offer a certified abstract of the operating record without a witness to lay foundation does not violate Iowa Rule of Criminal Procedure

2.5(3). While it is true, as Shipley contends, that a witness may not testify outside the content of the minutes, *State v. Walker*, 281 N.W.2d 612, 614 (Iowa 1979), rule 2.5(3) does not require the State to call a witness listed in the trial minutes to offer testimony which the State later determines to be unnecessary. *State v. Castillo*, 315 N.W.2d 63, 65 (Iowa 1982).

At trial, Shipley also challenged the adequacy of the minutes because the minutes did not make clear whether the "certified driving record" would be introduced pursuant to Iowa Code section 321.10 or section 321A.3. Iowa Code section 321.10 provides that the director of the IDOT or such officers as may be designated may certify a copy of "any record of the department." Iowa Code § 321.10. Iowa Code section 321A.3(1) states that the department may provide on request "a certified abstract of the operating record of [any] person. . . ." *Id.* § 321A.3. Shipley claimed the notice in the minutes that the State intended to introduce a "Certified Driving Record" is not sufficient to alert Shipley that the State in fact intended to introduce "an abstract of the operating record" prepared pursuant to Iowa Code section 321A.3(1).

We reject Shipley's argument. Shipley had notice that the State intended to offer into evidence a certified IDOT document reflecting his driving record. While the document offered into evidence by the State is more precisely described as "a certified abstract of the operating record" and not a certified driving record, Shipley knew the certified IDOT document would show a license revocation at the time of his arrest. The contents of the certified abstract thus simply do not constitute "inadmissible surprise" as contended by Shipley.

We further note that even if Shipley did not know the precise form of the record or its contents, he could have obtained a certified abstract of his own driving record from the IDOT pursuant to Iowa Code section 321A.3(1)

and been in a position to challenge the document offered by the State in the event of any discrepancies or factual inaccuracies. Further, if notice were a real issue, Shipley could have asked for a continuance. He did not. Under the circumstances, we cannot find that the alleged lack of notice regarding the precise form of the driving record violated Shipley's due process right to a fair trial. *Cf. State v. Conner*, 314 N.W.2d 427, 430 (Iowa 1982) (finding no surprise or prejudice where the defendant was fully advised of the evidence against him even if such evidence was outside of the minutes of testimony); *State v. Delano*, 161 N.W.2d 66, 69 (Iowa 1968) (finding no due process violation for the admission of a presentence report where defendant's counsel either had been permitted to examine the report and defendant's confession or had been fully informed as to the contents of both writings before sentencing).

**B. Statutory Requirements for Admission of Driving Abstract.** Shipley raises a number of challenges to the admission of the abstract of his operating record. Shipley claims the abstract must comply with all of the certification prerequisites established in the first paragraph of Iowa Code section 321.10. From this premise, Shipley asserts that under Iowa Code section 321.10, the State, in order to have a certified driving record admitted into evidence, must show that the record was signed by an authorized signator, that the signature was authentic and not a facsimile, and that the abstract bears a proper seal.

The State contends that the abstract was certified under Iowa Code section 321A.3(1) and admitted under the general requirements of the second paragraph of section 321.10. As a result, according to the State, even if the first paragraph of section 321.10 contains heightened foundational requirements, they have no application to a record certified pursuant to section 321A.3(1). The State argues that any abstract that

meets the certification requirements of section 321A.3(1) is then admissible "in the same manner and with the same force and effect as if the director or the director's designee had testified in person." Iowa Code § 321.10.

We agree with the State. Iowa Code section 321 is separate and distinct from Iowa Code chapter 321A. *State v. Sonderleiter*, 251 Iowa 106, 109, 99 N.W.2d 393, 395 (1959).[1] The document that was offered into evidence was an abstract of Shipley's operating record prepared pursuant to Iowa Code section 321A.3(1). Indeed, the abstract itself declares in bold face that it was prepared in compliance with section 321A.3. Therefore, the requirements for certification are controlled by Iowa Code section 321A.3(1), not section 321.10.

The term "certified" is not defined in Iowa Code section 321A.3(1), nor are its requirements delineated. We hold, nevertheless, that a document that appears to be an abstract of a driving record, bears the seal of the IDOT, declares that it is a true and accurate copy of the underlying record, and bears a facsimile signature of an officer of the department, all of which have been affixed to the underlying record after the record has been printed or made, amounts to a "certified" driving abstract under Iowa Code section 321A.3(1). *See State v. Irving*, 797 P.2d 1237, 1242–43 (Ariz. Ct. App. 1990) (holding statute allowing introduction of certified records of motor vehicle division supplements rules of evidence and allows admission of certified record with facsimile signature if record shows sufficient human involvement in certification); *People v. Meadows*, 861 N.E.2d 1171, 1174–75 (Ill. App. Ct. 2007) (holding preprinted signature and certification on a form satisfy statutory "certification" requirement for admission of driving abstract); *State v. Barckley*, 634 P.2d 1373, 1376–77 (Ore. Ct. App. 1981)

---

[1] Because of the distinction between chapter 321 and 321A and records certified thereunder, we reject Shipley's contention that our interpretation of the certification requirements of section 321A.3(1) renders section 321.10 meaningless.

(holding where statute does not expressly require "pen and ink" original signature for certification of driving record, preprinted signature of certifying officer is sufficient).

Iowa Code section 321.10 provides that a certified driving abstract prepared under Iowa Code section 321A.3(1) is admissible as if the director or his designee had testified in person. As a result, the certified driving abstract in this case was admissible without further foundation.

Shipley further contends the requirements of Iowa Rule of Evidence 5.902(1), (2), and (3) apply to the admission of the abstract. Specifically, he argues the document must bear an original signature and a seal in order to be self-authenticating or must be accompanied by an affidavit establishing it is a true and accurate copy of the record. Iowa R. Evid. 5.902(2), (3).

Under Iowa Rule of Evidence 5.902(4), however, a statute may provide for admission of documents without meeting the requirements of subsections (1), (2), and (3). Iowa R. Evid. 5.902(4). Iowa Code section 321.10, which allows for the admission of records certified under Iowa Code chapters 321 and 321A, is such a provision. It is clearly designed to allow for the routine introduction into evidence of certified driving records with a minimum of foundational requirements. As a result, the requirements of Iowa Rule of Evidence 5.902(1), (2), and (3) have no application to certified abstracts prepared pursuant to Iowa Code section 321A.3(1).

**C. Challenge to Driving Abstract and Officer Testimony on Hearsay Grounds.** Shipley challenges the admission of the abstract of his driving record as containing inadmissible hearsay within hearsay as it does not fall within the public records exception established by Iowa Rule of Evidence 5.803(8).

We reject the contention that the driving abstract constitutes inadmissible hearsay. The final unnumbered paragraph of Iowa Rule of

Evidence 5.803(8)(B) provides that the rule shall not supersede statutory provisions regarding the admissibility of evidence. Iowa Code section 321.10 directs that certified copies of abstracts shall be admitted into evidence with the same force and effect as if the director or his designee had testified in person. Thus, the first layer of hearsay relating to the document itself is resolved by statute. Iowa R. Evid. 5.802.

A second hearsay problem arises because the underlying abstract contains hearsay information concerning Shipley's prior license revocation. However, with respect to this hearsay issue, it is resolved by Iowa Rule of Evidence 5.803(8)(A), which allows admission of hearsay contained in public records setting forth its regularly conducted and reported activities, such as revocation of driving privileges. Iowa R. Evid. 5.803(8)(A).

Shipley also contends that Officer Zahner's testimony regarding the information dispatch relayed concerning the status of his license constitutes inadmissible hearsay. The State, however, argued that it was not seeking to introduce this testimony for the truth of the matter asserted, but only to explain why the officer acted as he did in arresting the defendant. In *State v. Reynolds*, 250 N.W.2d 434, 440 (Iowa 1977), we held that a law enforcement officer was permitted to explain his or her actions based on information received and its source. Based on *Reynolds*, we conclude that Officer Zahner's testimony was admissible for the limited purpose for which it was offered.

**IV. Confrontation Clause.**

**A. Introduction.** Shipley claims the admission of the certified abstract violates his right to confrontation established by the Sixth Amendment to the United States Constitution and Article I, section 10 of the Iowa Constitution. Shipley asserts the certified abstract may not be admitted consistent with the confrontation clauses unless the custodian of

the driving records is available to be cross-examined. Because Shipley has not contended that the Iowa Constitution should be interpreted differently than the Confrontation Clause in the Sixth Amendment to the United States Constitution, we construe the provisions identically. *In re Detention of Garren*, 620 N.W.2d 275, 280 n.1 (Iowa 2000).

Although the parties do not always clearly distinguish them, there are two distinct confrontation issues lurking in the shadows of this case. The first issue is whether the underlying public record—an abstract of Shipley's driving record—may be admitted without a live witness testifying and being subjected to cross-examination. For purposes of this question, the out-of-court statement offered into evidence is that the records of the IDOT show that Shipley was driving while revoked at the time of his arrest. The second question is whether statements made by the custodian of records in authenticating the underlying driving record may be admitted without the custodian's testimony. For purposes of this issue, the out-of-court statement offered into evidence is the certification of the record's genuineness.

**B. Recent Sixth Amendment Developments.** The Confrontation Clause of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI.

In *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), the Supreme Court considered the interplay between the constitutional requirements of the Sixth Amendment and various common law exceptions to the hearsay rule. Under the approach in *Roberts*, evidence admitted pursuant to various hearsay exceptions did not violate Confrontation Clause prohibitions as long as the evidence contained

sufficient "indicia of reliability." *Roberts*, 448 U.S. at 66, 100 S. Ct. at 2539, 65 L. Ed. 2d at 608.

In the seminal case of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court uprooted the established "indicia of reliability" test for admission of hearsay statements challenged under the Confrontation Clause. After a detailed historical exegesis of the purposes of the Confrontation Clause, the Supreme Court noted that the "principal evil" at which the Confrontation Clause was directed was inquisitorial *ex parte* examinations by government officials. *Crawford*, 541 U.S. at 50, 124 S. Ct. at 1363, 158 L. Ed. 2d at 192. According to the Supreme Court, admission of such statements does not turn on notions of reliability. *Id.* at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192–93. Instead, the court held that such statements were "testimonial" and could be admitted in subsequent proceedings only if the declarant was unavailable and there had been a prior opportunity for cross-examination. *Id.* at 61, 124 S. Ct. at 1370, 158 L. Ed. 2d at 198.

The Supreme Court in *Crawford* chose to "leave for another day" a comprehensive definition of "testimonial." *Id.* at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203. Nonetheless, the Court indicated that, at a minimum, there were four types of evidence that met the definition of testimonial: grand jury testimony, preliminary hearing testimony, former trial testimony, and statements resulting from police interrogations. *Id.* These are the types of evidence with the "closest kinship" to historical "abuses at which the Confrontation Clause was directed." *Id.*

In addition to these four categories of evidence, the Supreme Court provided three "formulations" to aid courts in determining whether other types of statements are testimonial. *Id.* at 51–52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193. The first formulation involved *ex parte* in-court testimony

or its functional equivalent where the declarant would reasonably expect the statements to be used at trial and where the defendant was unable to cross-examine the declarant. *Id.* The second formulation involved formalized testimonial materials such as confessions and depositions. *Id.* The third and most open-ended formulation included statements made under circumstances that would lead witnesses to objectively believe the statements might be used at trial. *Id. See generally* Kimberley McKelvey, Note, State v. Carter*: Rejecting* Crawford v. Washington*'s Third Formulation as Per Se Definition of Testimonial*, 67 Mont. L. Rev. 121 (2006).

The Supreme Court also did not offer a comprehensive definition of evidence that might be considered "nontestimonial." The Supreme Court in *Crawford*, however, stated that most of the common law exceptions to the hearsay rule covered statements that "by their nature were not testimonial." *Crawford*, 541 U.S. at 56, 124 S. Ct. at 1367, 158 L. Ed. 2d at 195–96. Further, the Supreme Court specifically distinguished testimonial statements from "business records or statements in furtherance of a conspiracy." *Id.* Although the majority opinion did not specifically address the issue, Chief Justice Rehnquist in a concurring opinion suggested that official records as well as business records fell outside the scope of the Confrontation Clause. *Id.* at 76, 124 S. Ct. at 1378, 158 L. Ed. 2d at 208 (Rehnquist, C.J., concurring).

The Supreme Court built onto its new Sixth Amendment approach in *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). In *Davis*, the Supreme Court held that statements made in response to an interrogation by a 911 operator could be considered nontestimonial if viewed objectively since the primary purpose was to respond to an emergency. *Id.* at 822, 126 S. Ct. at 2273, 165 L. Ed. 2d at 237. As noted in *United States v. Ellis*, 460 F.3d 920, 926 (7th Cir. 2006),

*Davis* implies that statements made in a 911 call may be nontestimonial even though the caller might have had reason to know that the underlying statements could be used in a criminal prosecution against the accused.

The Supreme Court in *Davis* appeared to minimize the scope of *Crawford* by emphasizing that the limitation of the Sixth Amendment to testimonial hearsay was "so clearly reflected in the text" that it "must . . . mark out not merely [the] 'core,' but [the] perimeter" of constitutional protection. *Davis*, 547 U.S. at 824, 126 S. Ct. at 2274, 165 L. Ed. 2d at 238. The Supreme Court also observed that only testimonial statements which cause the declarant to be a "witness" fell within the meaning of the Confrontation Clause. *Id.* at 876, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240. *Davis* further makes it clear that the Confrontation Clause does not apply to "nontestimonial" evidence. *Id.* In light of *Crawford* and *Davis*, the fighting Confrontation Clause issue with respect to admission of hearsay is whether the underlying statements should be considered "testimonial" or "nontestimonial."

**C. Application of Sixth Amendment to Admission of Underlying Public Record.** We now turn to the first Confrontation Clause issue in this case, namely, whether the admission of an abstract of Shipley's driving record violates the Sixth Amendment. The question of whether an individual's driving record is admissible without live testimony at trial has been considered in several post-*Crawford* cases in other jurisdictions. These cases have found that the information contained in a driving record is not "testimonial" and, as a result, such information may be admitted without violating the Sixth Amendment. *See, e.g., Card v. State*, 927 So. 2d 200, 203–04 (Fla. Dist. Ct. App. 2006); *State v. Vonderharr*, 733 N.W.2d 847, 852 (Minn. Ct. App. 2007); *State v. Davis*, 156 P.3d 93, 96 (Ore. Ct. App. 2007); *State v. Kronich*, 128 P.3d 119, 123 (Wash. Ct. App. 2006).

In addition to cases involving driving records, a number of post-*Crawford* courts have considered the admissibility of a wide variety of governmental documents involving or related to forensic analysis or other governmental acts. Specifically, courts have considered the admission of certifications regarding the proper operation of breathalyzers, *Bohsancurt v. Eisenburg*, 129 P.3d 471, 471 (Ariz. Ct. App. 2006); *Neal v. State*, 635 S.E.2d 864, 866 (Ga. Ct. App. 2006); *Jarrell v. State*, 852 N.E.2d 1022, 1027 (Ind. Ct. App. 2006); laboratory reports involving DNA or blood tests, *Ellis*, 460 F.3d at 927; *State v. Caulfield,* 722 N.W.2d 304, 310 (Minn. 2006); *State v. O'Maley*, 932 A.2d 1, 13 (N.H. 2007); documents certifying that a notice of suspension was served, *People v. Pacer*, 847 N.E.2d 1149, 1150 (N.Y. 2006); records related to prior convictions, *United States v. Weiland*, 420 F.3d 1062, 1076 (9th Cir. 2005), *cert. denied*, 547 U.S. 1114, 126 S. Ct. 1911, 164 L. Ed. 2d 667 (2006); *State v. King*, 146 P.3d 1274, 1278 (Ariz. Ct. App. 2006); and autopsy reports, *People v. Durio*, 794 N.Y.S.2d 863, 867 (Sup. Ct. 2005), *abrogated by People v. Rawlins*, 884 N.E.2d 1019, 1028 (N.Y. 2008).

In some of these post-*Crawford* cases, courts have taken a broad view that all public records which would generally qualify as "business records" or "government records" are admissible. *See State v. Dedman*, 102 P.3d 628, 636 (N.M. 2004); *Kronich,* 128 P.3d at 123. Other courts, however, have engaged in a more particularized analysis, focusing on the nature of the information contained in the record and the purposes of *Crawford. See, e.g., Johnson v. State*, 929 So. 2d 4, 7 (Fla. Dist. Ct. App. 2005); *Rawlins*, 884 N.E.2d at 1028–29.

On the narrow question before us,[2] namely, whether the hearsay information contained in an abstract of a driving record may be admitted without violating the Confrontation Clause, we agree with the conclusion in the majority of post-*Crawford* driving record cases that such information is constitutionally admissible. Rather than rely solely on the characterization of a document as a business or public record, we reach this decision by engaging in a more particularized analysis that focuses on the function of the right of cross-examination as discussed in *Crawford.*

In this case, Shipley's driving record was created *prior* to the events leading up to his criminal prosecution. As a result, Shipley's driving record would exist even if there had been no subsequent criminal prosecution. *King,* 146 P.3d at 1280; *Vonderharr,* 733 N.W.2d at 852. The government functionaries that entered the data establishing Shipley's driving record cannot be considered witnesses against him when no prosecution existed at the time of data entry. *King,* 146 P.3d at 1280. They were simply government workers with no axe to grind who performed their routine, ministerial tasks in a nonadversarial setting pursuant to a statutory mandate. *See* Iowa Code § 321.199(3); s*ee also Musser,* 721 N.W.2d at 750 (holding pre-crime HIV lab reports in possession of state officials pursuant to statutory duty admissible).

---

[2]A number of cases have also considered whether a certification of the absence or nonexistence of a government record is nontestimonial and thus admissible without violating the Confrontation Clause. *See, e.g., United States v. Cervantes-Flores*, 421 F.3d 825, 832 (9th Cir. 2005) (holding INS certification of nonexistence of record nontestimonial); *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005); *State v. Kirkpatrick*, 161 P.3d 990, 995 (Wash. 2007) (holding certification of the absence of a driving record nontestimonial). Other cases address the admissibility of out-of-court statements that certain procedures have been followed in connection with a public record. *People v. Capellan*, 791 N.Y.S.2d 315, 317 (Crim. Ct. 2004) (holding proof of mailing of suspension order testimonial). Our task in this case is limited to the consideration of the admissibility of a copy of an existing driving record kept by the custodian of records, not a certification of the absence of a record or an attestation that certain procedures have been followed with respect to a record.

Shipley's driving record was thus created under conditions far removed from the inquisitorial investigative function—the primary evil that *Crawford* was designed to avoid. *Crawford*, 541 U.S. at 50, 124 S. Ct. at 1363, 158 L. Ed. 2d at 192. We, therefore, hold that Shipley's underlying driving record is "nontestimonial" under *Crawford* and admissible without the testimony of a live witness.

**D. Applicability of Sixth Amendment to Authentication of Public Record.** The second Confrontation Clause question in this case is whether *Crawford* principles were violated when the district court allowed an out-of-court certification of authenticity to establish the foundation for the admission of Shipley's driving record.

There is a paucity of authority on the precise issue of certifications of authenticity with respect to state driving records. In *Jasper v. Commonwealth*, 644 S.E.2d 406 (Va. Ct. App. 2007), a Virginia appellate court curtsied to *Crawford* by recognizing that it would have been obvious to a reasonable person making the certification that the driving record could be used prosecutorially. *Jasper*, 644 S.E.2d at 409. The court, however, found that the admission of the certificate of authenticity was not sufficiently related to the principal evil of *Crawford* to bar its admission and was thus "nontestimonial." *Id.* at 410. At least one federal appellate court has held in a case involving government documents other than driving records that certificates of authenticity may be admitted without live testimony. *See Weiland*, 420 F.3d at 1062.

Some cases that are labeled as involving "authentication" or "certification" actually involve forensic records that did not exist prior to the criminal prosecution in question. For instance, in *Caulfield*, 722 N.W.2d at 310, the Minnesota Supreme Court determined that a "certification" of a laboratory test for cocaine was "testimonial" and could not be admitted

without an opportunity to cross-examine the author. The *Caulfield* court noted that the certified lab tests were prepared for litigation and were the equivalent of testimony identifying the substance seized from the defendant. *Id.*

A number of other courts have held that certifications or affidavits that provide information based on laboratory reports specifically prepared for criminal prosecution are testimonial under *Crawford* and must be excluded without testimony from a live witness. *See People v. Lonsby*, 707 N.W.2d 610, 618 (Mich. Ct. App. 2005) (holding lab report testimonial); *People v. Rogers*, 780 N.Y.S.2d 393, 397 (App. Div. 2004) (same). *But see Dedman,* 102 P.3d at 635–36 (holding lab report nontestimonial); *State v. Cao*, 626 S.E.2d 301, 305 (N.C. Ct. App. 2006) (holding lab reports nontestimonial when based upon mechanical processes); *State v. Crager*, 879 N.E.2d 745, 753 (Ohio 2007) (same).

Like the cases involving forensic certifications, the challenged certification in this case did not exist prior to a request made by the prosecution to obtain Shipley's driving record abstract. Further, a reasonable person receiving the request from a public prosecutor would understand that the certification and the underlying record would likely be offered in a criminal trial.

Nonetheless, we do not think these two factors are dispositive on the *Crawford* issue in cases involving certification of the authenticity of driving records. The purpose of the certification in this case is simply to confirm that a copy of a record is a true and accurate copy of a document that exists in a government data bank. The purpose of offering the certification is not to avoid cross-examination or to advance an inquisition, but only to allow the admission of an underlying record that was prepared in a

nonadversarial setting prior to the institution of the criminal proceeding. *Ellis*, 460 F.3d at 927; *Card*, 927 So. 2d at 203; *Jasper*, 644 S.E.2d at 410. Unlike in *Caulfield* and other "authentication" cases involving forensic analysis after the commission of the alleged crime, the custodian of records in this case is certifying the authenticity of a copy of a preexisting document. In this setting, the custodian of records cannot be said to be an adverse witness providing testimony against the accused in any meaningful sense.

Moreover, the custodian of documents certifies driving records not only to government prosecutors, but to others who request it. The content of the certification is not in response to structured government interrogation, but is imposed by law and was available on equal terms to Shipley. *See* Iowa Code § 321A.3(1). The admission of certifications of authenticity under these circumstances does not involve the government's use of what one commentator calls a "cloistered inquisitorial method[]" to gain advantage in a criminal prosecution. Ariana J. Torchin, Note, *A Multidimensional Framework for the Analysis of Testimonial Hearsay under* Crawford v. Washington, 94 Geo. L. J. 581, 604 (2007).

We therefore conclude that a Confrontation Clause violation does not occur when the prosecution offers an admissible driving record with a certificate of authenticity made by the custodian of records in the routine course of business.

### V. Conclusion.

We hold that there was no statutory or procedural defect in Shipley's conviction in this case. We further hold that admission of the certified copy of Shipley's driving abstract did not violate his Sixth Amendment rights

under *Crawford*. As a result, the decision of the court of appeals in this case is vacated and the judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Baker, J., who takes no part.