# IN THE COURT OF APPEALS OF IOWA

No. 23-1694
Filed October 30, 2024

**LYNN MARY STAATS and STANLEY EDGAR STAATS,**
    Plaintiffs-Appellants,

**vs.**

**RICHARD DREW YOTTER,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Louisa County, Clinton Boddicker,

Judge.


Property owners appeal after a jury verdict for the defendant in their action

for negligence and trespass. **AFFIRMED.**


John Daufeldt, John C. Wagner, and Colin Smyka of John C. Wagner Law

Offices, P.C., Amana, for appellants.

Nicholas J. Huffmon, Elliott R. McDonald III, and Patrick Woodward of

Brooks Law Firm, P.C., Davenport, for appellee.


Heard by Tabor, C.J., Ahlers, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**TABOR, Chief Judge.**

Orchard owners Lynn and Stanley Staats sued neighboring farmer Richard Yotter for negligence and trespass. The jury found for Yotter on both claims, and the district court denied the Staatses' motion for new trial. The Staatses appeal, arguing that the district court erred by (1) excluding a warning letter the Iowa Department of Agriculture and Land Stewardship (IDALS) sent to Yotter and (2) allowing the jury to view an electronic exhibit during deliberations. We find no error in the district court's exclusion of the warning letter on hearsay grounds and no abuse of discretion in its decision to let the jury view the exhibit on a "clean" laptop. So, we affirm.

## I.      Facts and Prior Proceedings

The Staatses own a chestnut orchard in Wapello. In June 2019, Stanley Staats[1] filed a formal complaint to the IDALS alleging that herbicide drifted from Yotter's farm field onto the Staatses' orchard, damaging their chestnut trees. He reported that Yotter "farm[s] the fields east and south of [the Staatses' property] and possibly sprayed during the week of May 20th." Robert Mikota, an investigator for the IDALS Pesticide Bureau, looked into the complaint. As part of Mikota's investigation, Yotter signed an affidavit stating that he applied herbicides to a farm field "located approximately 2000 feet northeast of [the Staatses'] acreage" on May 16, 2019.

Following the investigation, the Staatses sued Yotter for negligence and trespass, alleging that he "applied an herbicide burndown application" to farmland

---

[1] We will refer to Stanley Staats by his last name.

east of the Staatses' orchard "in a manner inconsistent with label instructions and the Code of Iowa," which caused the destruction of 764 of the Staatses' chestnut trees.[2] The case proceeded to jury trial.

The Staatses planned to offer into evidence a warning letter that Carol Corbin, a case review officer for the IDALS, sent Yotter in June 2020. The letter stated, in part: "Mr. Mikota documented that on May 16, 2019[,] at approximately 8:29 a.m., you made a burndown application to your soybean field located directly east of Mr. Staats'[s] acreage." The letter also stated: "Your use of a registered pesticide inconsistent with its labeling or rules of the state is a violation of Iowa Code paragraph 206.11(3)(b) which deems it unlawful for anyone to use a pesticide in a manner inconsistent with label directions."

Yotter moved in limine to exclude the warning letter, contending that it was inadmissible hearsay, factually inaccurate, and unfairly prejudicial. The district court reserved ruling on the admission of the letter until the Staatses formally offered it as an exhibit. During trial, Yotter questioned Corbin about the letter outside the presence of the jury. Corbin testified that the letter was intended to summarize Mikota's investigation based on "all the documentation, all the information given." She also explained, "I'm not taking sides when I case review." When Yotter asked about discrepancies between Mikota's investigation reports and her warning letter, Corbin testified that the letter was wrong about the location of the field Yotter reported spraying:

---

[2] The Staatses' orchard was on the Iowa Sensitive Crop Registry in 2019, and they were certified as organic growers. They marketed their crop to various restaurants and other consumers. Their experts testified that chestnuts can be eaten fresh but are mostly consumed after they are boiled or roasted.

Q. Okay. In your letter you state: "Mr. Mikota documented that on May 16, 2019, at approximately 8:29 a.m., you made a burndown application to your soybean field located *directly east* of Mr. Staats' acreage." That language is contrary to what the narrative says—

A. Yes.

Q. —inasmuch as Mikota documented that he made the spray down on Donnie Williams' acreage, which is *2000 feet to the northeast*; correct?

A. The "east" in the letter is an error and should say "north." That is my error.

Q. What about "located directly east of Mr. Staats' acreage"?

A. Again, it should say "directly north," not "east." And I . . . didn't catch that until I was reviewing the case file for the court today.

Q. I see. So that . . . letter is in error?

A. That is an error on the direction of where [Yotter's] field is located to Mr. Staats' property.

(Emphasis added.)

Yotter then moved to exclude the warning letter and Corbin's testimony, contending that her conclusions were not based on an articulable standard of proof, the letter and testimony were factually inaccurate and unfairly prejudicial under Iowa Rule of Evidence 5.403, and the letter was inadmissible hearsay. The Staatses countered that Corbin "ought to be able to testify about her own letter without it being hearsay," and it was "a public record. Anybody can gain access to this. That's an exception, number (8)." They also contended that "this is one of hundreds . . . of facts that the jury is going to have an opportunity to sort out in this case." The district court sustained Yotter's objections and excluded the letter, finding that it was hearsay without exception and its prejudicial effect would outweigh its probative value under rule 5.403.

The date when Yotter applied herbicides to the field directly east of the Staatses' orchard—the alleged source of the herbicide drift—was a factual dispute

at trial.  The Staatses claimed Yotter sprayed that field on May 16.  Staats testified that he discovered damage to his orchard from the herbicide drift on June 3.  After discovering the damage, Staats took photographs of Yotter's field directly east of the orchard.  Yotter testified that he did not spray that field until June 10.

Both parties offered photographs that Staats took of that field on June 3.  The Staatses offered their photos in paper form.  Staats testified that they were "higher resolution photographs" and that he had them enlarged and printed at Walmart.  Yotter's photo exhibits were saved on a flash drive and only shown to the jury in digital form on the courtroom monitors.  There were visible differences in the coloration of the photographs offered by each side.[3]  And the parties disputed whether the photographs showed "burndown" of plants in the field caused by herbicides, which would indicate that the field was sprayed before the photos were taken.

During deliberations, the jury submitted a request to the court to view Yotter's Exhibit VV.  That exhibit, a flash drive, contained two electronic photographs Yotter offered of the field to the east of the Staatses' orchard.  The exhibit was admitted into evidence, and the photos were shown to the jury on the courtroom monitors during trial without objection by the Staatses.

---

[3] Staats and Yotter both testified about the coloration of the photos they offered. Yotter testified that he believed the Staatses' photos were "altered in some way or changed in terms of the filter used" and that they did not reflect the "true colors of the original photo."



*Yotter's Exhibit U, on Exhibit VV flash drive.*



*Yotter's Exhibit V, on Exhibit VV flash drive.*

The court at first responded to the jury's request that it did "not have the technological capability to show that exhibit at this time." The next morning, the court allowed Yotter's counsel to provide a brand new, "clean" laptop for the jury to use to view the exhibit.[4] The court attendant verified that the laptop contained no additional files and could not access the internet. And nothing on the laptop identified that it was provided by Yotter's counsel.

The Staatses objected to providing the laptop to the jury, arguing:

> It provides the jury with the appearance that [Yotter] is responding directly to the jury's request when the equipment should have been made available from the outset of the jury deliberation. [We] believe it is prejudicial to the [Staatses], and we have no idea whether the appearance of the photos played upon unknown equipment will be consistent with the images displayed to the jury upon the courtroom monitors. . . .
>
> [Yotter] is suggesting that we present to the jury images which may or may not be consistent with the images they previously viewed after almost ten hours of deliberation. It's like stopping after a full

---

[4] Before Yotter's counsel offered to provide the laptop, the court suggested showing the exhibit to the jury on a TV monitor, but the monitor did not support the file formats for the images. Yotter's counsel also expressed concern that the paper copies did not accurately reflect the coloration and resolution of the images.

day of deliberation and showing the jury new and additional evidence.

When the court asked the Staatses' counsel to describe how the photographs looked different on the laptop than on the courtroom monitors, he stated: "I think that they are not as bright maybe as what they were in the courtroom. But, you know, they're all the same picture. . . . That's kind of my point is there's different appearances of that same photograph." He elaborated that he thought the photographs were "a little darker" on the laptop screen.

After hearing the objection, the court allowed the jury to use the laptop to view the exhibit, reasoning:

> The jurors have asked to see it. It's been admitted into evidence without objection. And as far as the jury knows, this is a piece of equipment that's come from the judicial branch and not from either of the parties. So I don't think there's any danger of prejudice that the jury would start to think somehow that this is new or different evidence. This is evidence they've already seen in the courtroom.
> For whatever reason . . . they've asked to see it, and I'm going to allow them to see it.

The jury returned a verdict for Yotter, and the district court entered judgment dismissing the Staatses' claims against him. The Staatses moved for a new trial, contending that the court erred in excluding the IDALS warning letter and in providing the laptop to the jury during deliberations. The court denied the motion. The Staatses appeal.

## II.     Scope and Standards of Review

"Our review of rulings on motions for new trial depends on the grounds for new trial asserted in the motion and ruled upon by the district court." *Hansen v. Cent. Iowa Hosp. Corp.*, 686 N.W.2d 476, 480 (Iowa 2004). We review hearsay rulings for correction of errors at law. *State v. Dessinger*, 958 N.W.2d 590, 597

(Iowa 2021).  We review most other evidentiary rulings for abuse of discretion.  *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017).  "An abuse of discretion occurs when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *Id.* (cleaned up).

### III.    Analysis

### A.  The Warning Letter

First, the Staatses argue that the district court erred in excluding the warning letter the IDALS sent to Yotter in June 2020.  The Staatses contend that the letter was admissible as a public record excepted from the rule against hearsay under Iowa Rule of Evidence 5.803(8)(A).[5]  "Hearsay 'is a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted.'"  *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003) (quoting Iowa R. Evid. 5.801(c)).  Hearsay is inadmissible unless it is exempt from the rule or falls within an exception.  *See* Iowa R. Evid. 5.802.

Under the public records exception, "a record or statement of a public office or agency" is excepted from the rule against hearsay "if it sets out . . . [f]actual findings from a legally authorized investigation."  Iowa R. Evid. 5.803(8)(A)(iii).  But the exception "does not apply if the opponent shows that the source of the information or other circumstances indicate a lack of trustworthiness."  *Id.*  And the exception does not cover "[f]actual findings resulting from special investigation of a particular complaint, case, or incident."  Iowa R. Evid. 5.803(8)(B)(iv).

---

[5] The Staatses' motion for new trial did not address whether the warning letter met any hearsay exceptions.  Yotter's resistance contended that "the IDALS letter is inadmissible hearsay because it was an out-of-court statement to which no exception applies."  The district court's ruling did not address the hearsay issue.

The district court excluded the warning letter on hearsay grounds during trial, finding that it did not meet this exception. The court reasoned:

> [W]e've talked about exception (8) before. . . . And as I understand it, the public records exception includes factual findings from a legally authorized investigation.
>
> The problem with this letter is that it may include . . . disputed factual findings, but it does more than that. It also contains legal conclusions. And so . . . it's a hybrid document, that it not only has some factual findings in it, but it also has legal conclusions that there was a violation of Iowa laws as it relates to the application of these chemicals.
>
> The hallmark of an analysis under the public records exception is whether the document itself has trustworthiness or lack of trustworthiness. We've heard testimony here that there's one side that would say a factual inaccuracy. The other side I assume would say an honest mistake. But that goes to the trustworthiness of what's in the letter. It goes to the reliability of what's in the letter.
>
> . . . .
>
> So . . . the Court finds that the letter itself is not admissible on the basis of the hearsay for which there is no valid exception or one that's not been brought to my attention.

The Staatses argue that the "warning letter fits within 5.803(8)(A)(iii)'s public records exception to hearsay" because it "contains factual findings from a legally authorized investigation." They continue to claim that while the letter included disputed factual findings, "the jury could weigh all of the evidence provided at trial . . . in its consideration of the warning letter and in rendering its decision in this case." They cite two cases in support of their argument—*Umbdenstock v. Interstate Power Co.*, No. 07-1816, 2008 WL 3367600, at *1–2 (Iowa Ct. App. Aug. 13, 2008), and *State v. Shipley*, 757 N.W.2d 228, 234 (Iowa 2008). In *Umbdenstock*, our court found no error in the admission of a chapter of a United States Department of Agriculture (USDA) publication "authored by fifteen scientists recognized as credible researchers and reviewers of scientific literature" that summarized "the levels of stray voltage current which have an effect on dairy cows"

under the public records exception. 2008 WL 3367600, at *1–2. In *Shipley*, our supreme court found no error in the admission of a certified abstract of a criminal defendant's driving record. 757 N.W.2d at 234.

As Yotter correctly points out, neither *Shipley* nor *Umbdenstock* concerned whether the information underlying the records lacked trustworthiness or resulted from a special investigation of a particular complaint. *See* 757 N.W.2d at 231–32; 2008 WL 3367600, at *1–2; *see also* Iowa R. Evid. 5.803(8)(A)(iii), (B)(iv). And in *Shipley*, there was a separate statutory provision authorizing admission of the driving record. *See* 757 N.W.2d at 234. So these cases do not aid the Staatses' argument for admissibility.

Yotter contends that the district court correctly found the warning letter did not meet the public records exception because it did not accurately summarize Mikota's investigation and thus lacked trustworthiness. He emphasizes Corbin's admission that the letter misidentified the location of the field Yotter reported spraying.[6] Yotter also argues that the warning letter resulted from the investigation of the specific complaint Staats filed with the IDALS. Thus, it is excluded from the exception under rule 5.803(8)(B)(iv).

Neither party points us to Iowa case law addressing when the public records exception does not apply because "the opponent shows that the source of the information or other circumstances indicate a lack of trustworthiness" or because the factual findings resulted "from special investigation of a particular complaint,

---

[6] Yotter claims that the distinction between the field directly east of the Staatses' orchard and the field 2000 feet northeast of the orchard was crucial because, based on his expert's testimony, "the herbicide could not have drifted 2000 feet onto the [Staatses'] property to cause the damage."

case, or incident." Iowa R. Evid. 5.803(8)(A)(iii), (B)(iv).[7]  But based on the plain language of rule 5.803(8), we agree with Yotter that the public records exception does not apply to the IDALS warning letter.

The record—including the testimony of the letter's author—supports the district court's conclusion that the source of the information lacked trustworthiness. In addition, the district court correctly noted that the letter included not only disputed factual findings but also the legal conclusion that Yotter's "use of a registered pesticide inconsistent with its labeling or rules of the state is a violation of Iowa Code paragraph 206.11(3)(b)."  And the record supports Yotter's contention that the IDALS issued the letter because of its investigation into the Staatses' complaint filed in June 2019.  Thus, we find no error in the court's decision to exclude the warning letter on hearsay grounds.

Because we affirm the court's ruling that the warning letter was inadmissible hearsay, we need not address the Staatses' argument that the court erred in also excluding the letter under Iowa Rule of Evidence 5.403.  The exclusion of the warning letter did not warrant a new trial.

---

[7] Our case law on these provisions of rule 5.803(8) is sparse and mainly limited to the criminal context.  *See, e.g.*, *State v. Reitenbaugh*, 392 N.W.2d 486, 487–90 (Iowa 1986) (holding that admission of criminal defendant's arrest warrant containing statements of non-testifying probation officer under public records exception was improper because "statements of the probation officer constituted factual findings resulting from the special investigation of a particular incident, defendant's failure to report, thereby making those hearsay statements inadmissible under rule [5.]803(8)(B)(iv)"); *State v. McCurry*, 544 N.W.2d 444, 446–48 (Iowa 1996) (discussing reasoning behind rule 5.803(8)(B) exceptions to the admissibility of public records and reports in criminal cases).

**B. The "Clean" Laptop**

Second, the Staatses argue that the district court abused its discretion by allowing the jury to use the "clean" laptop Yotter's counsel provided to view the two digital photos contained on Yotter's flash drive during deliberations. They cite Iowa Rule of Civil Procedure 1.926(2), which states: "When retiring to deliberate, jurors may take their notes with them and shall take with them all exhibits in evidence except as otherwise ordered." They also cite *Parnham v. Weeks*, 163 N.W. 454, 457–58 (Iowa 1917) for the proposition that "Iowa law supports that the Court's decision on what goes with the jury into the deliberation room is, when preserved, an appealable decision."[8]

The Staatses concede that they "could not find Iowa law directly on point" but claim that "many jurisdictions follow the rule that exhibits susceptible to manipulation and experimentation by the jury should not be permitted to accompany the jury into deliberations." *See Taylor v. Reo Motors, Inc.*, 275 F.2d 699, 705 (10th Cir. 1960) ("The salient question is whether the experiment or investigation made by the jury . . . while they were deliberating [was] within the scope or purview of the evidence introduced at the trial, or whether it amounts to the taking of evidence outside the presence of the parties."); *United States v. Beach*, 296 F.2d 153, 158–59 (4th Cir. 1961) ("The law is well settled that a case must be decided upon evidence submitted in court during the trial and not upon private experiments of the jurors.").[9]

---

[8] Yotter does not contest error preservation.

[9] As Yotter correctly points out, this case is unlike *Taylor* and *Beach*. *See Taylor*, 275 F.2d at 705 (explaining that the jury "dismantled and reassembled [a heat exchanger] . . . by the use of pocket knives, nail clippers and other pocket tools

The Staatses raise three objections to the jury having the laptop. First, because the images "displayed on the new laptop screen were [likely] somewhat different from the images originally shown to the jury in open court," and the coloration of the images was a major issue at trial, they insist that "bringing in yet another version of the images only create[d] more confusion."[10] Second, they claim that providing the laptop to the jury "drew undue and particular attention to [Yotter's] flash drive Exhibit VV." Third, they suggest that "the jury could have used the laptop to in some way manipulate the images, examining and reviewing the images in ways that were not available to the jurors during trial."

In its ruling on the Staatses' motion for new trial, the district court explained:

> [T]he decision to allow the jury to view Exhibit VV was done only after the jury specifically requested to see it. Also, it is important to note that Exhibit VV was properly admitted into evidence, *without objection by the [Staatses]*. When the jury first requested to see the exhibit, the court informed the jury that it did not have the capability to show the exhibit to them *at this time*. The concern of the court was that there was not a "clean" computer in the courthouse with which to show the exhibit to the jury.

The court continued:

> The issue of the computer was resolved when [Yotter's] counsel purchased a brand new laptop and delivered it to the court the next day. The court then allowed the jury to view Exhibit VV on the clean computer. No mention was made to the jury as to where

---

belonging to members of the jury" during deliberations); *Beach*, 296 F.2d at 158 (explaining that the court "had an electric drop cord delivered to the jury" during deliberations, which defense counsel believed jurors used to test the operation of adding machines).

[10] In their reply brief, they elaborate:

> [I]f the photo as viewed on the new laptop looked more green/blue and vibrant (and looked less consistent with what would be expected with prior application of burndown spray) as compared to those photos presented by [the Staatses] through their exhibits, then that might lead the jury to give undue weight to any photo viewed on what they may understand to be "the court's laptop."

the laptop came from. . . . By allowing the jury to see the exhibit on a clean laptop the following day, the jury, using common sense, could infer that *the court itself* procured the necessary technology to show the already admitted exhibit to the jury for use during their deliberations.

The district court has "considerable discretion to either grant or deny the jury's request" to view exhibits in the jury room during deliberations. *State v. Baumann*, 236 N.W.2d 361, 366 (Iowa 1975). "[A]ll exhibits should go with the jury to the jury room unless the district court exercises its discretion to order otherwise." *Baux v. Bickel*, No. 00-0214, 2001 WL 427349, at *1 (Iowa Ct. App. Apr. 27, 2001); *see* Iowa R. Civ. P. 1.926(2) ("When retiring to deliberate, jurors . . . *shall* take with them all exhibits in evidence *except as otherwise ordered*." (emphasis added)).

We find no abuse of discretion in the district court's decision to allow the jury to use the "clean" laptop to view Yotter's Exhibit VV. As the district court emphasized, the Staatses did not object to the admission of the exhibit during trial.[11] We disagree that allowing the jurors to view an admitted and previously published exhibit—after they specifically requested to do so—caused them to give the exhibit "undue weight." The Staatses also do not make a convincing record that the images looked different on the laptop screen than they did on the courtroom monitors or, if they did, how that prejudiced their case. And nothing in the record supports the Staatses' suggestions that the jurors used the laptop to

---

[11] At oral argument, the Staatses' counsel acknowledged that they "certainly could have objected" to the admission of the exhibit at trial.

manipulate the images in an improper manner.[12]  Accordingly, we find no grounds

to reverse or remand for a new trial.

**AFFIRMED.**

---

[12] Even if the jurors used the laptop to zoom in on the images, "the mere making of a more critical examination of an exhibit than was made during the trial is not objectionable." *Beach*, 296 F.2d at 158–59.