PEOPLE v NUNLEY

Docket No. 302181. Submitted July 7, 2011, at Lansing. Decided October 13, 2011, at 9:00 a.m. Precedential effect stayed, 490 Mich 922. Reversed, 491 Mich 686. Certiorari denied, 568 US ___.

Terry Nunley was charged in the 15th District Court with driving while his license was suspended (DWLS), second offense, MCL 257.904(1) and (3)(b). The prosecution filed a motion in limine, seeking a ruling that the document certifying that the Secretary of State had mailed defendant notice that his license was suspended, which is an element of DWLS, would be admissible at trial. The district court, Chris Easthope, J., denied the motion, and the prosecution appealed. The Washtenaw Circuit Court, Melinda Morris, J., reversed the district court's ruling that the certificate of mailing was inadmissible because it lacked a signature, but affirmed its ruling that admitting the document without the testimony of its author would violate defendant's constitutional right to be confronted with the witnesses against him. The Court of Appeals granted the prosecution's application for interlocutory appeal.

The Court of Appeals *held*:

The circuit court did not err by ruling that the certificate of notice was testimonial in nature. Under the Confrontation Clause of the Sixth Amendment of the United States Constitution, a person facing criminal prosecution has the right to be confronted with the witnesses against him or her, and § 20 of article 1 of the Michigan Constitution provides the same right. These provisions allow the admission of testimonial statements of witnesses absent from trial only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant. Statements are testimonial if their primary purpose is to establish or prove past events potentially relevant to later criminal prosecution. A document need not have been prepared solely in anticipation of trial in order to be classified as testimonial; rather, it is subject to Confrontation Clause requirements if it was made under circumstances that would lead an objective witness reasonably to believe that it would be available for use at a later trial. In light of the fact that the prosecution was required

to prove that defendant had received notice that his license was suspended as an element of DWLS, the certificate of mailing satisfies this condition.

Affirmed.

SAAD, P.J., dissenting, would have held that the certificate of mailing was nontestimonial because it was created independently of any investigatory or prosecutorial purpose given that no crime had yet been committed and because cross-examination of its author would elicit little or nothing to ensure its reliability.

1. CONSTITUTIONAL LAW — EVIDENCE — RIGHT OF CONFRONTATION — TESTIMONIAL STATEMENTS.

Testimonial statements of witnesses absent from trial are admissible only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant; a statement is considered testimonial if its primary purpose is to establish or prove past events potentially relevant to later criminal prosecution; a statement satisfies this condition if it was made under circumstances that would lead an objective witness reasonably to believe that it would be available for use at a later trial (US Const, Am VI; Const 1963, art 1, § 20).

2. CONSTITUTIONAL LAW — EVIDENCE — RIGHT OF CONFRONTATION — TESTIMONIAL STATEMENTS — NOTICE OF SUSPENSION OF DRIVER'S LICENSES — CERTIFICATES OF MAILING.

The document certifying that the Secretary of State mailed a person notice that his or her driver's license was suspended is testimonial in nature; it may only be admitted to prove a charge of driving with a suspended license without the testimony of its preparer if the preparer is unavailable and the defendant had a prior opportunity to cross-examine him or her (US Const, Am VI; Const 1963, art 1, § 20; MCL 257.212; MCL 257.904[1]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Brian L. Mackie*, Prosecuting Attorney, and *David A. King*, Assistant Prosecuting Attorney, for the people.

*James E. R. Fifelski* for defendant.

Before: SAAD, P.J., and JANSEN and DONOFRIO, JJ.

DONOFRIO, J. The prosecution appeals by leave granted the circuit court's order affirming in part the district court's order denying the prosecution's motion in limine to admit certain documentary evidence on the ground that it violated defendant's right to confront witnesses against him.[1] The prosecution contends that the circuit court erred by affirming in part the district court's denial of its motion in limine because the admission of the Secretary of State's certificate · of mailing would not have violated the Confrontation Clause. Because the circuit court did not abuse its discretion when it affirmed the denial of the prosecution's motion in limine for the reason that the certificate of mailing is testimonial in nature and would violate the Confrontation Clause if admitted without witness testimony, we affirm.

I

On September 9, 2009, a police officer pulled defendant over for failing to properly secure the load in his truck and for improper identification of a commercial vehicle. The police officer cited defendant for driving while license suspended (DWLS), and then released defendant from the scene.[2] The prosecutor charged defendant with DWLS-second offense, MCL 257.904(1)

---

[1] US Const, Am VI; Const 1963, art 1, § 20. The prosecution applied in this Court for leave to appeal pursuant to MCR 7.205(E)(1), and this Court granted leave to appeal. *People v Nunley*, unpublished order of the Court of Appeals, entered March 1, 2011 (Docket No. 302181).

[2] The prosecutor, in his applications for leave to appeal in the circuit court and in this Court, asserts that defendant admitted to the charging officer that he did not have a valid license. There is no record evidence or supporting documentation in the lower court record for this assertion. Further, the record is silent regarding defendant's receipt of the notification that his driving privileges had been suspended.

and (3)(b).[3] The prosecutor obtained defendant's certified driving record from the Secretary of State's office. Included as part of defendant's driving record is a "Certificate of Mailing of Orders and Rest Lics." The certificate provides in relevant part:

> I CERTIFY THAT I AM EIGHTEEN YEARS OF AGE OR OLDER AND THAT ON THIS DATE NOTICE OF THE ORIGINAL ORDER OF SUSPENSION OR RESTRICTED LICENSE WAS GIVEN TO EACH OF THE PERSONS NAMED BELOW BY FIRST-CLASS UNITED STATES MAIL AT LANSING, MICHIGAN AS PROVIDED IN SECTION 212 OF MICHIGAN VEHICLE CODE (MCL 257.212).
>
> DATE 6-22-09   OFFICER OR EMPLOYEE F. Bueter
> [handwritten]

On the certificate of mailing, the date is handwritten, and "F. Bueter" is typed on the "Officer or Employee" signature line. Defendant's name and driver's license number are listed below the above-quoted language.[4]

On June 3, 2010, the prosecutor brought a motion in limine before the district court, seeking a ruling that the certificate of mailing was admissible without both the signature of the person giving the notice and without calling a representative of the Secretary of State as a witness. Defendant objected to the motion in

---

[3] The prosecutor enhanced defendant's DWLS charge to DWLS-second offense pursuant to MCL 257.904(3)(b) because of defendant's prior driving record. MCL 257.904(3)(b) provides that if a violation occurs after a prior conviction, the sentence is enhanced to "imprisonment for not more than 1 year or a fine of not more than $1,000, or both." The fact that defendant is facing a charge of DWLS-second offense rather than DWLS is of no consequence to our analysis of the issues in this case.

[4] Defendant's certified driving record shows that defendant had obtained a temporary license or permit pursuant to MCL 257.625g on February 7, 2009, and was not made aware of its revocation through means other than the notice sent on June 22, 2009. The record also establishes an earlier DWLS conviction.

limine and asserted his right to cross-examine the issuer of the certificate of mailing.[5] On July 27, 2010, the district court held a hearing on the prosecutor's motion in limine. The district court held that by its nature, a "certificate" requires a signature and that because the court did not "find any other reason why this document would be used except in litigation," the Confrontation Clause in the Sixth Amendment of the United States Constitution required that, in order for the certificate to be admitted in defendant's trial, the person who prepared the certificate appear and be subject to cross-examination. In sum, the district court denied the prosecution's motion in limine, ruling that a signature was required on the certificate in order for it to be effective as a basis for a DWLS charge and that admission of the certificate without the testimony of its author would violate defendant's Confrontation Clause rights. On September 2, 2010, the prosecutor applied in the circuit court for leave to appeal pursuant to MCR 7.103.

On December 3, 2010, the circuit court held a hearing on the prosecutor's application for leave to appeal. On January 3, 2011, the circuit court issued an order granting interlocutory appeal and reversing in part and affirming in part the district court's order. First, the circuit court concluded that "the issues [were] important and not otherwise susceptible of review." Next, it reversed the district court and held that a signature was not required for the certificate to be effective as a basis for a DWLS charge because the court "cannot imply a requirement for a handwritten signature in the absence of any express or specific reference to a signature in MCL 257.212" and because the "[t]he definitions of

---

[5] From the briefing and argument it is inferred that defendant challenges receipt of the Order of Action containing the notice of suspension.

'certify' and 'certification' are not so clear as to make it obvious from the use of 'certification' that a signature is required."[6] Finally, the circuit court affirmed the district court's ruling regarding the Confrontation Clause, specifically holding that without the testimony of its author, admission of the certificate would violate defendant's constitutional right to confront the witnesses against him.

In reaching its decision regarding the Confrontation Clause, the circuit court observed that there was no evidence in the record that the certificate of mailing was used for anything other than proof of the notice element for DWLS. The circuit court did not find persuasive the caselaw that the prosecution cited—*People v Hislope*, 13 Mich App 63; 163 NW2d 675 (1968) (holding that a certified driving record was admissible for proving facts documentary in nature), and *People v Khoshaba*, unpublished opinion per curiam of the Court of Appeals, issued April 11, 2006 (Docket No. 257484) (holding that the "face sheet" of a driving record, which contained the seal of the state of Michigan, was a business record that was not testimonial in nature)—because the certificate in the instant case was not simply a multipurpose record or a record kept by the Secretary of State's office for its own purposes. The circuit court distinguished the certificate from a certificate authenticating a document as an accurate copy of a public record. The circuit court concluded that the certificate was a document certifying that the author "took an action, namely, mailing a legal document to a particular person and place, on a particular date — facts that [were] essential elements of the criminal offense with which the defendant [was] charged."

---

[6] Apparently because the circuit court ruled in its favor regarding whether a signature was required, the sole issue the prosecutor raises on appeal is with regard to the Confrontation Clause challenge.

The prosecutor now appeals by leave granted.

II

Generally, this Court reviews a circuit court's deci-
sion regarding the admission of evidence for an abuse of
discretion. *People v Lukity*, 460 Mich 484, 488; 596
NW2d 607 (1999). "When the decision regarding the
admission of evidence involves a preliminary question
of law, such as whether a statute or rule of evidence
precludes admissibility of the evidence, the issue is
reviewed de novo." *People v Washington*, 468 Mich 667,
670-671; 664 NW2d 203 (2003). Accordingly, there is an
"abuse of discretion when a trial court admits evidence
that is inadmissible as a matter of law." *People v Katt*,
468 Mich 272, 278; 662 NW2d 12 (2003). Also, "whether
the admission of evidence would violate a defendant's
constitutional right of confrontation is a question of law
that we review de novo." *People v Dinardo*, 290 Mich
App 280, 287; 801 NW2d 73 (2010).

III

The Confrontation Clause of the United States Con-
stitution provides that "[i]n all criminal prosecutions,
the accused shall enjoy the right . . . to be confronted
with the witnesses against him . . . ." US Const, Am VI.
The Michigan Constitution provides the same guaran-
tee for criminal defendants. Const 1963, art 1, § 20;
*Dinardo*, 290 Mich App at 288. Testimonial statements
of witnesses absent from trial are therefore admissible
only when the original declarant is unavailable and the
defendant has had a prior opportunity to cross-examine
that declarant. *Michigan v Bryant*, 562 US ___; 131 S Ct
1143, 1153; 179 L Ed 2d 93 (2011); *Crawford v Wash-
ington*, 541 US 36, 54, 68; 124 S Ct 1354; 158 L Ed 2d
177 (2004). Ordinarily, whether a statement is testimo-

nial in nature depends on whether it constitutes a
" 'declaration or affirmation made for the purpose of
establishing or proving some fact.' " *Crawford*, 541 US
at 51 (citation omitted). This Court has explained that
"[s]tatements are testimonial where the 'primary pur-
pose' of the statements or the questioning that elicits
them 'is to establish or prove past events potentially
relevant to later criminal prosecution.' " *Dinardo*, 290
Mich App at 288, quoting *People v Lewis (On Remand)*,
287 Mich App 356, 360; 788 NW2d 461 (2010), quoting
*Davis v Washington*, 547 US 813, 822; 126 S Ct 2266;
165 L Ed 2d 224 (2006). If a statement is nontestimo-
nial, then "the Confrontation Clause does not restrict
state law from determining admissibility." *People v
Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009),
citing *Crawford*, 541 US at 68.

### A. *CRAWFORD* AND *MELENDEZ-DIAZ*

This Confrontation Clause case is governed by the
United States Supreme Court's recent decision in
*Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct
2527; 174 L Ed 2d 314 (2009). The pertinent facts of the
case are as follows:

> Melendez-Diaz was charged with distributing cocaine
> and with trafficking in cocaine in an amount between 14
> and 28 grams. At trial, the prosecution placed into evidence
> the bags seized from [the arrest scene]. It also submitted
> three "certificates of analysis" showing the results of the
> forensic analysis performed on the seized substances. The
> certificates reported the weight of the seized bags and
> stated that the bags "[h]a[ve] been examined with the
> following results: The substance was found to contain:
> Cocaine." The certificates were sworn to before a notary
> public by analysts at the State Laboratory Institute of the
> Massachusetts Department of Public Health, as required
> under Massachusetts law.

Petitioner objected to the admission of the certifi-
cates, asserting that our Confrontation Clause decision
in *Crawford* v. *Washington*, 541 U. S. 36 [124 S Ct 1354;
158 L Ed 2d 177] (2004), required the analysts to testify
in person. The objection was overruled, and the certifi-
cates were admitted pursuant to state law as "prima
facie evidence of the composition, quality, and the net
weight of the narcotic . . . analyzed." [*Melendez-Diaz*,
557 US at 308-309 (citations omitted).]

The Court described its previous ruling in *Crawford*
as follows:

In *Crawford*, after reviewing the Clause's historical
underpinnings, we held that it guarantees a defendant's
right to confront those "who 'bear testimony' " against
him. A witness's testimony against a defendant is thus
inadmissible unless the witness appears at trial or, if the
witness is unavailable, the defendant had a prior opportu-
nity for cross-examination.

Our opinion described the class of testimonial state-
ments covered by the Confrontation Clause as follows:

"Various formulations of this core class of testimonial
statements exist: *ex parte* in-court testimony or its
functional equivalent—that is, material such as affida-
vits, custodial examinations, prior testimony that the
defendant was unable to cross-examine, or similar pre-
trial statements that declarants would reasonably expect
to be used prosecutorially; extrajudicial statements . . .
contained in formalized testimonial materials, such as
affidavits, depositions, prior testimony, or confessions;
statements that were made under circumstances which
would lead an objective witness reasonably to believe
that the statement would be available for use at a later
trial." [*Id.* at 309-310, quoting *Crawford*, 541 US at
51-52 (citation omitted.)]

The *Melendez-Diaz* Court concluded that the "certifi-
cates of analysis" were actually affidavits, explaining:

The documents at issue here, while denominated by Massachusetts law "certificates," are quite plainly affidavits: "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths." They are incontrovertibly a " 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " The fact in question is that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine—the precise testimony the analysts would be expected to provide if called at trial. The "certificates" are functionally identical to live, in-court testimony, doing "precisely what a witness does on direct examination." [*Melendez-Diaz*, 557 US at 310-311 (citations omitted.)]

The *Melendez-Diaz* Court summed up:

In short, under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to " 'be confronted with' " the analysts at trial. [*Id.* at 311.]

Ultimately, the United States Supreme Court held that the "certificates of analysis," which showed the forensic analysis results for the seized controlled substances, constituted testimonial statements barred from admission by the Confrontation Clause. *Id.* at 308-311. The *Melendez-Diaz* Court observed that the "certificates" were made under circumstances that would lead an objective person to reasonably believe that they would be available for use at trial and that under Massachusetts law their sole purpose was to provide prima facie evidence regarding the analyzed substance. *Id.* at 311, citing *Crawford*, 541 US at 52, and Mass Gen Laws ch 111, § 13. The Court

concluded that the analysts who created the "certificates" were witnesses for purposes of the Confrontation Clause and that the defendants had the right to be "confronted" by them at trial, absent a showing that the analyst were unavailable to testify and defendant had a prior opportunity for cross-examination. *Melendez-Diaz*, 557 US at 311.

### B. MCL 257.904(1) AND MCL 257.212

MCL 257.904(1) governs the elements of driving with a suspended or revoked license and is the provision defendant was charged with violating. It provides:

> A person whose operator's or chauffeur's license or registration certificate has been suspended or revoked and who has been notified as provided in [MCL 257.212] of that suspension or revocation, whose application for license has been denied, or who has never applied for a license, shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state. [MCL 257.904(1).]

MCL 257.212 specifically states:

> If the secretary of state is authorized or required to give notice under this act or other law regulating the operation of a vehicle, unless a different method of giving notice is otherwise expressly prescribed, notice shall be given either by personal delivery to the person to be notified or by first-class United States mail addressed to the person at the address shown by the record of the secretary of state. The giving of notice by mail is complete upon the expiration of 5 days after mailing the notice. *Proof of the giving of notice in either manner may be made by the certificate of a person 18 years of age or older, naming the person to whom notice was given and specifying the time, place, and manner of the giving of notice.* [Emphasis added.]

### C. APPLICATION

The prosecution argues that in determining that the admission of the certificate of mailing would violate the Confrontation Clause, both lower courts erroneously relied on an expansive and inaccurate interpretation of *Melendez-Diaz*. The certificate of mailing states that defendant had been sent notice of his driver's license suspension. As the circuit court stated in its written opinion, "The parties agree that the proof of giving notice mandated by MCL 257.212 is a necessary element for a charge of DWLS." The parties are correct. Again, MCL 257.904(1) states: "A person whose operator's . . . license . . . has been suspended or revoked and who has been notified as provided in [MCL 257.212] of that suspension or revocation . . . shall not operate a motor vehicle . . . ." So, in order to convict defendant of DWLS, the prosecutor must prove that defendant's license had been suspended and that defendant had been notified of the suspension as provided in MCL 257.212. That defendant was notified of the suspension as provided in MCL 257.212 is precisely what the certificate of mailing that the prosecutor seeks to have admitted states. Like the lab analyst report at issue in *Melendez-Diaz*, the certificate of mailing in this case is being offered to prove a fact in question. *Melendez-Diaz*, 557 US at 310, citing *Crawford*, 541 US at 51. Indeed, the certificate of mailing here is being offered to prove an element of the offense: the notification required by the plain language of MCL 257.904(1). Furthermore, in light of the fact that notification is an element of the offense, certainly the certificate of mailing was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ." *Melendez-Diaz*, 557 US at 311,

quoting *Crawford*, 541 US at 52 (quotation marks omitted). The lower courts did not misinterpret *Melendez-Diaz*; to the contrary, the district court and circuit court properly applied the holding of the case.

The prosecutor also argues that the certificate of mailing at issue is analogous to a docketing statement or a clerk's certification authenticating an official record and is therefore nontestimonial and admissible. In support of his argument, the prosecutor relies on the following passage in *Melendez-Diaz*:

> The dissent identifies a single class of evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record—or a copy thereof—for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permitted "to certify to the correctness of a copy of a record kept in his office," but had "no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect." [*Melendez-Diaz*, 557 US at 322 (citations omitted).]

The prosecutor asserts that the situation in the present case is identical, arguing that Secretary of State records are similar to a clerk's certification. The prosecutor has missed a crucial distinction. If the document at issue were merely a copy of defendant's driving record sent along with the certificate of mailing and "F. Bueter" had merely been certifying the authenticity of that record, the prosecutor would have an excellent point. But the copy of the record is not at issue, and Bueter was not certifying its authenticity. Bueter was certifying that the notice of suspension had been sent, the very fact that must be proved to convict defendant of DWLS. The critical distinction is that the author of the certificate of mailing, here F. Bueter, is providing

more than mere authentication of documents; he is actually attesting to a required element of the charge. Unlike a docketing statement or clerk's certification, the certificate of mailing will be used against defendant to prove an element of DWLS and is necessary for establishing an essential fact at trial. MCL 257.904(1).

The prosecutor also argues that the certificate of mailing is admissible because the Secretary of State's records are not prepared "solely" for trial. MCL 257.204a(1) states:

> The secretary of state shall create and maintain a computerized central file that provides an individual historical driving record for a person with respect to all of the following:
>
> (a) A license issued to the person under chapter 3 [of the Michigan Vehicle Code, MCL 257.301 *et seq.*].
>
> (b) A conviction, civil infraction determination, or other licensing action that is entered against the person for a violation of this act or a local ordinance substantially corresponding to a provision of this act, or that is reported to the secretary of state by another jurisdiction.
>
> (c) A failure of the person, including a nonresident, to comply with a suspension issued pursuant to [MCL 257.321a].
>
> (d) A cancellation, denial, revocation, suspension, or restriction of the person's operating privilege, a failure to pay a department of state driver responsibility fee, or other licensing action regarding that person, under this act or that is reported to the secretary of state by another jurisdiction. This subdivision also applies to nonresidents.
>
> (e) An accident in which the person is involved.
>
> (f) A conviction of the person for an offense described in [MCL 257.319e].
>
> (g) Any driving record requested and received by the secretary of state under [MCL 257.307].

(h) Any notice given by the secretary of state and the information provided in that notice under [MCL 257.317(3) or (4)].

(i) Any other information received by the secretary of state regarding the person that is required to be maintained as part of the person's driving record as provided by law.

Careful review of MCL 257.204a reveals that it does not require creation of the certificates or maintenance of the certificates in the Secretary of State's records. Although MCL 257.204a(1)(h) requires the maintenance of "notices," it does not require records to be kept of the certificates verifying the fact that a notice has been sent. Our review of the record in this case shows that the certificate of mailing does not appear in defendant's certified driving record. The Secretary of State created the certificate of mailing independently of MCL 257.204a.

The prosecutor asserts that the certificate of mailing cannot be subject to Confrontation Clause requirements because it was not prepared solely for litigation. The prosecutor's argument is based on the following passage from *Melendez-Diaz*:

Here, moreover, not only were the affidavits " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' " but under Massachusetts law the *sole purpose* of the affidavits was to provide "prima facie evidence of the composition, quality, and the net weight" of the analyzed substance. [*Melendez-Diaz*, 557 US at 311 (citations omitted).]

As can be seen, however, the last clause addressing the Massachusetts law was not the main point. Under the *Melendez-Diaz* test, the affidavits are subject to Confrontation Clause requirements if "made under circum-

stances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* (citation and quotation marks omitted). When noting that the sole purpose of the affidavits under Massachusetts law was to provide prima facie evidence of the nature and weight of the substance, the Supreme Court was not narrowing the rule or augmenting the test. Instead, when read in context, the *Melendez-Diaz* Court was just pointing out that not only do the affidavits meet that test, they meet it without equivocation. That is, the Court was referring to a specific fact about the affidavits at issue in that case; it was not incorporating the notion of "sole purpose" into the rule. In this case, the sole purpose of the preparation of the certificate of mailing was to provide proof of notice as required by MCL 257.212, which is necessary for a conviction under MCL 257.904(1). The primary purpose of the certificate "is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 US at 822; *Dinardo*, 290 Mich App at 288 (quoting *Davis*). Under these circumstances, an objective witness could reasonably believe that the statement would be available for use at a later trial. *Melendez-Diaz*, 557 US at 311.

The prosecutor also argues that "the purpose of this Secretary of State document is not to create a brand new record, as would a lab report analyzing controlled substances." This argument is made with reference to the following language from *Melendez-Diaz*: "A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Melendez-Diaz*, 557 US at 322-323. The record belies this claim. F. Bueter certainly created an original

record, namely the certificate of mailing the notice of suspension, for the purpose of providing evidence of notice as required under MCL 257.904(1).

The prosecutor also argues that because the Secretary of State is required by statute to maintain the records, the records are not testimonial. The *Melendez-Diaz* Court opined:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial. Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment. [*Melendez-Diaz*, 557 US at 324.]

Furthermore, in *Melendez-Diaz*, the Supreme Court addressed the respondent's argument that the analysts' affidavits were admissible without confrontation because they are " 'akin to the types of official and business records admissible at common law.' " *Id.* at 321 (citation omitted). The Supreme Court stated that the affidavits do not qualify as such records, but "even if they did, their authors would be subject to confrontation nonetheless." *Id.* The Supreme Court continued: "Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. See Fed. Rule Evid. 803(6). But that is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Id.*

So, regardless of the fact that the certificate of mailing here could be considered a public record in the sense that it is a record setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," MRE 803(8), it is testimony against defendant. And the prosecutor concedes that one purpose of the certificate of mailing is "the production of evidence for use at trial," *Melendez-Diaz*, 557 US at 321, because the certificate of mailing will be used to establish that notice was provided by the Secretary of State to defendant, an element of DWLS. MCL 257.904(1). Indeed, the certificate of mailing is the only evidence of proof of notice and is created solely for that purpose. In other words, even if the certificate of mailing was prepared in the regular course of the Secretary of State's business, the certificate of mailing is testimonial because it will be used for the purpose of proving or establishing some fact at trial. Therefore, it is subject to Confrontation Clause requirements.

The prosecutor also relies on this Court's conclusion in *Lewis (On Remand)*, 287 Mich App at 363, that an autopsy report prepared pursuant to a statutorily imposed duty was not testimonial in nature. At issue in that case was whether an autopsy report prepared by two nontestifying medical examiners, but admitted through the testimony of a third medical examiner, violated defendant's right to confront witnesses against him. This Court had originally analyzed the issue under *Crawford* and two Michigan cases, but our Supreme Court directed this Court on remand to reconsider the issue in light of *Melendez-Diaz*. This Court stated:

> In our previous opinion, we thoroughly discussed this Court's applications of *Crawford* in *People v Jambor (On Remand)*, 273 Mich App 477; 729 NW2d 569 (2007), and *People v Lonsby*, 268 Mich App 375; 707 NW2d 610 (2005).

On the basis of these decisions, we concluded that the autopsy report was nontestimonial because it "was 'not prepared in anticipation of litigation against defendant,' but pursuant to a 'duty imposed by law,' MRE 803(8)." [*People v*] *Lewis*, [unpublished opinion of the Court of Appeals, issued April 15, 2008 (Docket No. 274508)], citing *Jambor*. We also noted that a medical examiner is required by statute to investigate the cause and manner of death of an individual under certain circumstances, including death by violence, MCL 52.202(1)(a), and thus further concluded that the admission of the autopsy report through [a different medical examiner's] testimony did not violate defendant's Sixth Amendment rights under *Crawford* and *Davis*. [*Id*. at 360.]

On remand, this Court arrived at the same result, reasoning:

The Supreme Court's determination that the forensic analysts' certificates in *Melendez-Diaz* were testimonial was based on characteristics that are not present here. Unlike the certificates, which were prepared for the "sole purpose" of providing "prima facie evidence" against the defendant at trial, *Melendez-Diaz*, 557 US at [311], the autopsy report was prepared pursuant to a duty imposed by statute. *Lewis*, unpub op at 4-5; MRE 803(8); MCL 52.202(1)(a). As we stated in our previous opinion:

"[W]hile it was conceivable that the autopsy report would become part of [a] criminal prosecution, investigations by medical examiners are required by Michigan statute under certain circumstances regardless of whether criminal prosecution is contemplated." [*Lewis*, unpub op at 4.]

Furthermore, unlike the way the certificates in *Melendez-Diaz* were used, [the testifying medical examiner] formed independent opinions based on objective information in the autopsy report and his opinions were subject to cross-examination. See *Lewis*, unpub op at 5; cf., *Jambor*, 273 Mich App at 488, and *Lonsby*, 268 Mich App at 392. Because the autopsy report was not prepared prima-

rily for use in a later criminal prosecution and defendant cross-examined [the testifying medical examiner] regarding his independent opinions based on the autopsy report, the report is not testimonial evidence and defendant was not denied the right to be confronted by the two nontestifying medical examiners who prepared it. *Davis*, 547 US at 822; *Lonsby*, 268 Mich App at 392. [*Id*. at 362-363.]

Thus, under *Lewis*, the facts that the autopsy report was prepared pursuant to a statutorily imposed duty and that the report had to be prepared regardless of whether criminal prosecution was contemplated were important factors.[7] And as the prosecutor argues here, that is also true of driving records. Indeed, under MCL 257.204a, driving records must be compiled and put into the Secretary of State's centralized computer file completely independently of any contemplation of criminal prosecution.

It is important to keep in mind just what the prosecutor wants to have admitted and what the lower courts refused to admit. It was not defendant's driving record. Nor was it the notice of suspension. It was the certificate of mailing that the notice of suspension was in fact mailed to defendant. The key factor in this case is that the certificate of mailing is proof of notice by virtue of the plain language of MCL 257.212, which will indisputably be used to establish an element of the offense charged. MCL 257.904(1). In this case, unlike in *Lewis*, the certificate of mailing is the only proof of notice, and it is necessary to establish the notice element of the DWLS. MCL 257.904(1).

---

[7] It is of further moment that the independent opinions provided the proof of elements of the crime and that the author of those opinions was subject to cross-examination. We also note that the continued viability of *Lewis* may be in question given the recent decision of the Supreme Court in *Bullcoming v New Mexico*, 564 US ___; 131 S Ct 2705; 180 L Ed 2d 610 (2011), as discussed later in this opinion.

The certified driving record cannot stand in for the certificate of mailing because the certified driving record says nothing about the certification. There is no entry in defendant's certified driving record regarding the June 22, 2009, certification of mailing. In fact, the certified driving record shows that notification occurred on June 11, 2009. And the June 11, 2009, notice itself provides that defendant's driving privileges and license were to be revoked from June 27, 2009, through at least June 26, 2010. The effective date within the notice coincides with the provision of MCL 257.212 that the giving of notice by mail is complete upon the expiration of five days after mailing the notice. The certificate of mailing shows that it was sent on June 22, 2009, and five days later constitutes the effective date of June 27, 2009. We cannot ascertain the effective date of the revocation from the certified copy of the driving record—the record that the Secretary of State is required to maintain pursuant to MCL 257.204a(1). It is only the permissive record—the certificate of mailing—that rounds out the salient dates required under MCL 257.212. Thus, we conclude that the certificate of mailing is "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Melendez-Diaz*, 557 US at 310-311 (citations omitted).

Finally, the prosecutor directs our attention to this Court's decisions in *Hislope* and *Khoshaba*. In *Hislope*, this Court held that the right of confrontation does not apply to the defendant's driving record compiled by the Secretary of State. This Court explained:

> In view of the fact that defendant's driving record certified by the secretary of State is essentially an abstract of documents concerning accidents in which defendant was involved, moving violations of which he was convicted, and revocations and suspensions of his operating privileges, it

would be proving facts documentary in nature and so would be admissible for proving the fact that defendant's driver's license was revoked. [*Hislope*, 13 Mich App at 67.]

*Hislope* is completely irrelevant to the present case because, once again, it is not defendant's driving record that is at issue, it is the certificate of mailing that the notice of suspension was in fact mailed. That defendant was notified of the suspension in a specific manner is an essential element of the offense. The certificate of mailing attests to the personal capacity, knowledge, and actions of its author. More specifically, the certificate of mailing contains testimony of F. Bueter that he is of sufficient age and that the original order of suspension was mailed. The certificate does not certify the record of the Secretary of State, but that the Secretary of State behaved in a certain way. The certificate of mailing is not a computer-generated record, but instead is a typed certificate with the operative date handwritten by the author. Whether the order of suspension was given by personal delivery or by mail, the certificate of mailing is offered as a substitute for the testimony of the person or persons making the delivery to the defendant or mailing to the address of record for the defendant as required by MCL 257.212. The proffered certificate of mailing cannot be confronted about when, where, or how the statutory obligation to provide notice of suspension of driving privileges was accomplished.

In *Khoshaba*, unpub op at 5-6, this Court held that the "face sheet" of a driving record, which contained the seal of the state of Michigan, was a business record that was not testimonial in nature. Unlike the certificate of mailing in the instant case, the "face sheet" was created independent of a prosecutorial purpose, and it did not contain declarations or affirmations made for the purpose of proving a fact at trial. With respect to the

prosecutor's reliance on *Hislope* and *Khoshaba*, cases with which we do not quarrel, they are not germane to the issues presented in this appeal.

IV

We conclude that the certificate of mailing at issue in this case is a testimonial statement under the Confrontation Clause. We point out that contrary to the prosecution's contention that the lower courts improperly relied on and interpreted *Melendez-Diaz*, 557 US 305, another recent Supreme Court decision supports the conclusion that the certificate of mailing is testimonial, *Bullcoming v New Mexico*, 564 US ___; 131 S Ct 2705; 180 L Ed 2d 610 (2011). In *Bullcoming*, the defendant was arrested for driving while intoxicated. The prosecutor presented evidence that the defendant's blood alcohol level was well above the legal limit through a certified forensic laboratory report recording the results of a gas chromatograph machine that determined the blood alcohol level. *Id.* at ___; 131 S Ct at 2709. The prosecution did not call as a witness the analyst who actually completed and signed the certification. Instead, the prosecution called another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on the defendant's blood sample. *Id.* at ___; 131 S Ct at 2709. The Supreme Court was presented with the question "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id.* at ___; 131 S Ct at 2710.

The Supreme Court held "that surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id.* at ___; 131 S Ct at 2710. The Supreme Court also stated that its answer to the question presented was "in line with controlling precedent," namely, *Crawford* and *Melendez-Diaz. Id.* at ___; 131 S Ct at 2713. The Supreme Court again articulated the rule we must follow: "As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Id.* at ___; 131 S Ct at 2713. The Supreme Court also rejected the argument that "unbending application of the Confrontation Clause . . . would impose an undue burden on the prosecution." *Id.* at ___; 131 S Ct at 2717. The Supreme Court reiterated the notion set out in *Melendez-Diaz* that the constitutional requirement at issue "may not be disregarded at our convenience." *Id.* at ___; 131 S Ct at 2718 (citation, quotations marks, and alterations omitted).

The dissent in *Bullcoming* believed that "requiring the State to call the technician who filled out a form and recorded the results of a test is a hollow formality." *Id.* at ___; 131 S Ct at 2724 (Kennedy, J., dissenting). Likewise, in the instant case, it has crossed our minds that calling F. Bueter to testify that he is of suitable age and actually mailed the order of suspension in this case is a "hollow formality" and could cause a burden on both the prosecutor and the Secretary of State. Whether a burden is experienced is yet to be seen. Obviously, a stipulation that the required

notice of suspension, a predicate element of the crime of DWLS, is uncontested may be a routine experience and the burden of presenting the author of the certificate of mailing a rare occurrence in a select few cases, such as when a defendant contests the receipt of the notice. Nevertheless, we are bound by *Crawford* and its progeny and so hold that the circuit court did not err by affirming the district court's denial of the motion in limine to admit the certificate of mailing without testimony because the certificate is a testimonial statement under the Confrontation Clause.

Affirmed.

JANSEN J., concurred with DONOFRIO, J.

SAAD, P.J. (*dissenting*).

### I. INTRODUCTION

I respectfully dissent because the certificate of mailing is nontestimonial. Accordingly, I would reverse the circuit court's order.

The majority incorrectly holds that because proof of notice is an element of driving while license suspended (DWLS), the certificate of mailing produced by the Secretary of State is testimonial. This analysis is flawed because it does not address the context in which the certificate was created, and it reasons backwards to conclude that a statement must be testimonial if it relates to an element of the crime. In *Davis v Washington*, 547 US 813; 126 S Ct 2266; 165 L Ed 2d 224 (2006), the United States Supreme Court held that consideration of context is critical in determining whether evidence is testimonial. See *id.* at 822. In this case, the context in which the certificate of mailing was created demonstrates that it was made before the commission

of a crime, and thus independently from any investi-
gatory or prosecutorial purpose. Further, it is not the
rule as articulated in *Crawford v Washington*, 541 US
36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and its
progeny that evidence is testimonial merely because
it constitutes proof of an element of a crime. More-
over, to hold that the certificate of mailing here is
testimonial runs contrary to the purpose of the Con-
frontation Clause—to ensure the reliability of evidence
through vigorous cross-examination—because cross-
examination here would elicit little or nothing of value
to ensure that reliability.

## II. ANALYSIS

### A. TESTIMONIAL EVIDENCE UNDER *DAVIS*

I disagree with the majority's conclusion that be-
cause proof of notice is an element of DWLS, the
disputed certificate of mailing is testimonial. The
simple fact that a piece of evidence proves an element of
a crime does not automatically render it testimonial. As
our Supreme Court explained in *Davis*, it is the context
surrounding the creation of evidence that determines
whether that evidence is testimonial—not whether it
proves an element of the crime charged.

*Davis* involved a domestic dispute between defendant
Davis and his former girlfriend, Michelle McCottry.
*Davis*, 547 US at 817. Davis violated a no-contact order
and assaulted McCottry. *Id*. at 818. McCottry called 911
while the incident was still in progress and, at the
prompting of the 911 operator, gave Davis's name and a
description of the assault over the telephone. *Id*. at
817-818. The prosecutor used a recording of the 911 call
at trial. *Id*. at 819. It was presumably an important
piece of evidence in leading to Davis's conviction be-
cause the state's only witnesses in the case were the two

police officers who responded to the 911 call and Mc-Cottry did not testify at trial. *Id.* at 818-819. Davis took the position that the prosecution's use of the recorded 911 call violated his constitutional rights because the recording was testimonial and he did not cross-examine McCottry. See *id.* at 819.

The Supreme Court rejected Davis's argument and held that the 911 recording was nontestimonial. *Id.* at 822. In explaining its decision, the Court stressed the context in which the 911 call was made and contrasted its provenance with that of a truly testimonial statement:

> The question before us in *Davis*, then, is whether, objectively considered, the interrogation that took place in the course of the 911 call produced testimonial statements. When we said in *Crawford* that "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial. It is, in the terms of the 1828 American dictionary quoted in *Crawford*, " '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " A 911 call, on the other hand, and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to "establis[h] or prov[e]" some past fact, but to describe current circumstances requiring police assistance. [*Id.* at 826-27 (citations omitted).]

In other words, in the 911 recording, McCottry was "speaking about events *as they were actually happening*, rather than describ[ing] past events." *Id.* at 827 (citations and quotation marks omitted). Such a situa-

tion, the Court ruled, is entirely different from the police interrogation at issue in *Crawford*, which "took place hours after the events [the speaker] described had occurred." *Id.* The Court was careful to note that McCottry faced "an ongoing emergency" and that the "circumstances of [her] interrogation objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency. She simply was not acting as a *witness*; she was not *testifying*." *Id.* at 828. Thus—despite its critical importance in securing Davis's conviction—the 911 call was not testimonial.

*Davis*, then, stands for two propositions regarding the classification of evidence as testimonial or nontestimonial. First, the context in which the evidence is created is crucial in determining whether that evidence is testimonial or nontestimonial. Second, it is inconsequential for the purposes of this determination whether the evidence in question is essential to proving that defendant committed the charged crime. Accordingly, we must examine the context of the evidence at issue here—the context in which the certificate of mailing was created—to accurately determine whether or not that certificate is testimonial or nontestimonial.

### B. THE CERTIFICATE OF MAILING

As the majority observes, the certificate of mailing at issue here was created pursuant to MCL 257.212, which outlines the procedures used in mailing notices of license status to their recipients. MCL 257.212 fits in the wider statutory framework created by MCL 257.204a(1), which governs the maintenance of driving records in Michigan.[1] And, as the majority points out, a

---

[1] Note the primarily administrative—not criminal or prosecutorial— nature of MCL 257.204a(1). Among other things, this provision requires the Secretary of State to "create and maintain a computerized central file

notice sent in compliance with MCL 257.212 is a nec-
essary element of DWLS under MCL 257.904(1).

The majority makes much of this link between the
certificate of mailing and MCL 257.904(1), asserting
that the former's presence in the latter's elements
automatically makes the former testimonial. The "pri-
mary purpose of the certificate," the Court states, " 'is
to establish or prove past events potentially relevant to
later criminal prosecution.' " *Ante* at 289. The quoted
passage is from *Davis*, but it is used out of context. The
sentence the majority quotes applies only to statements
made during police interrogations—not documents pro-
duced by the Secretary of State, or evidence in general.
The full quotation reads:

> Without attempting to produce an exhaustive classifica-
> tion of all conceivable statements . . . as either testimonial
> or nontestimonial, it suffices to decide the present cases to
> hold as follows: *Statements are nontestimonial when made
> in the course of police interrogation* under circumstances
> objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an
> ongoing emergency. They are testimonial when the circum-
> stances objectively indicate that there is no such ongoing
> emergency, and that the primary purpose of the interroga-
> tion is to establish or prove past events potentially relevant
> to later criminal prosecution. *Davis*, 547 US at 822 (em-
> phasis added).

While the majority is certainly correct that the cer-
tificate of mailing is an essential piece of evidence in
proving defendant's guilt, it does not follow that this
renders the certificate testimonial. As noted, the ma-
jority's analysis also ignores the context in which the
evidence is made. At the time the certificate of mailing

that provides an individual historical driving record for a person"—a
central file, hence, that includes every driver (criminal and noncriminal
alike) in the state of Michigan.

was created, no crime had taken place, nor was there an ongoing criminal investigation involving the defendant. Therefore, it was impossible for F. Bueter, or an "objective witness," "reasonably to believe" that the certificate of mailing, at the time of its creation, "would be available for use at a later trial." *Crawford*, 541 US at 52 (citation and quotation marks omitted).

The Secretary of State suspended Nunley's license effective June 11, 2009. The corresponding certificate of mailing is dated June 22, 2009. Nunley was cited for DWLS on September 9, 2009. Thus, Nunley's "driving record was created *prior* to the events leading up to his criminal prosecution." *State v Shipley*, 757 NW2d 228, 237 (Iowa, 2008).[2] The certificate of mailing "would exist even if there had been no subsequent criminal prosecution." *Id.* Indeed, it predated the event that led to Nunley's citation by more than two months. It strains credulity to suggest that the certificate was "made under circumstances which would lead an objec-

---

[2] Courts in other states have been careful to note this temporal distinction in deciding whether evidence is testimonial. In addition to *Shipley*, see *State v Vonderharr*, 733 NW2d 847, 852 (Minn App, 2007) (contrasting certificates of laboratory analysis prepared exclusively for prosecutorial use with state-created driving records: "Unlike the laboratory report, Vonderharr's [Department of Public Safety] records were not prepared for the purpose of prosecuting Vonderharr. The records were produced before Vonderharr was charged and even before the incident that lead [sic] to him being charged occurred."); *People v Espinoza*, 195 P3d 1122, 1127 (Colo App, 2008) (holding a proof of notice of license revocation nontestimonial: "Although an objective person who prepared such a proof of service might reasonably believe it would be available in the event of a later traffic violation, we conclude that this possibility does not make the document testimonial where, as here, the document served a routine administrative function and was created before the charged crime occurred."); and *State v Dukes*, 38 Kan App 2d 958, 963; 174 P3d 914 (2008) (ruling that a driving record is nontestimonial because the state is statutorily required to create and maintain driving records regardless of whether they become relevant to a later criminal investigation).

tive witness reasonably to believe that the statement
would be available for use at a later trial" because
Nunley had not committed a crime and F. Bueter, when
he certified the mailing, had no reason to expect that
Nunley would commit a crime. See *Crawford*, 541 US at
52. Bueter, or any other state employees who create
certificates of mailing, "cannot be considered wit-
nesses" against Nunley "when no prosecution existed at
the time of data entry." *Shipley*, 757 NW2d at 237.
Bueter would likely have suspected that the certificate
of mailing was just that: a certificate of notice, certify-
ing a warning to encourage defendant to comply with
the law, not a piece of evidence for use in a hypothetical
trial.[3] As such, the certificate of mailing was "created
under conditions far removed from the inquisitorial
investigative function—the primary evil that *Crawford*
was designed to avoid." *Id.* at 238. Therefore, on the
basis of the context in which it was created, the certifi-
cate of mailing is nontestimonial.

### C. COMPARISON TO OTHER CONFRONTATION CLAUSE CASES

In *Crawford*, *Davis*, *People v Lonsby*, 268 Mich App
375; 707 NW2d 610 (2005), and *Melendez-Diaz v Mas-
sachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d 314
(2009), the statements, affidavits, and laboratory cer-
tificates at issue were made *after* the alleged commis-

---

[3] Indeed, the notice itself (which defendant admits receiving) contains
a large header stating "WARNING — DO NOT DRIVE," suggesting that
the purpose of the notice (and its accompanying certification) is to help
the suspended license-holder comply with the law and *avoid* any ensuing
consequences, not to serve as a piece of evidence should the suspended
license-holder disregard the notice and break the law. The hundreds (or
thousands) of such certificates of mailing the Secretary of State produces
each month are certainly not all used in criminal trials—in fact, it is more
probable that the vast majority of certificates are never used as evidence
at all, as the recipients of the suspended-license notices comply with the
law and do not drive-unlike defendant here.

sion of a crime, as part of ongoing criminal investiga-
tions of the defendants.[4] The "statements" in each case
were held to be testimonial because they were "made
under circumstances which would lead an objective
witness reasonably to believe that the statement would
be available for use at a later trial." *Crawford*, 541 US
at 52 (citation and quotation marks omitted). In other
words, at the time the evidence in question was created,
the defendants in *Crawford*, *Davis*, *Lonsby*, and
*Melendez-Diaz* were already identified as suspects by
the criminal justice system. For that reason, that
evidence—created after the commission of the crime,
with an express prosecutorial purpose—was testimo-
nial. And, accordingly, the defendants in those cases had
the right to confront and cross-examine the individuals
who produced the very evidence used to prove the
crime.

   *Crawford* and its progeny robustly defended the right
of confrontation for good reason: the "crucible of cross-
examination" is essential to assessing the reliability of
evidence. *Crawford*, 541 US at 61. "The Clause thus
reflects a judgment, not only about the desirability of
reliable evidence (a point on which there could be little
dissent), but about how reliability can best be deter-
mined." *Id.* The Confrontation Clause, then, is not a
mere formality that serves "symbolic goals"—instead,
" '[t]he right to confront and to cross-examine wit-
nesses is primarily a functional right that promotes

---

[4] See *Crawford*, 541 US at 38-40 (involving a witness's response to a
police interrogation regarding a stabbing); *Davis*, 547 US at 822 (holding
that statements made to law-enforcement personnel during a 911 call
immediately after the commission of a crime were nontestimonial);
*Lonsby*, 268 Mich App at 380-381 (concerning a lab report conducted
after defendant allegedly committed sexual assault); and *Melendez-Diaz*,
557 US at 308-309 (addressing a forensic analysis of substance in the
defendant's possession suspected to be cocaine).

reliability in criminal trials.' " *People v Fackelman*, 489
Mich 515, 528; 802 NW2d 552 (2011), quoting *Lee v
Illinois*, 476 US 530, 540; 106 S Ct 2056; 90 L Ed 2d 514
(1986).

*Melendez-Diaz* explains why confrontation ensures
the reliability of evidence at trial, in the context of
forensic analysts responsible for testing and assessing
evidence against criminal defendants. First, "neutral
scientific testing" is not necessarily neutral or reliable:
"Forensic evidence is not uniquely immune from the
risk of manipulation." *Melendez-Diaz*, 557 US at 318. "A
forensic analyst responding to a request from a law
enforcement official may feel pressure—or have an
incentive—to alter the evidence in a manner favorable
to the prosecution." *Id.*[5] Confrontation, through rigor-
ous cross-examination, can help expose such fraud if it
exists. Second, "[c]onfrontation is designed to weed out
not only the fraudulent analyst, but the incompetent
one as well." *Id.* at 319.[6] Like all expert witnesses, "an
analyst's lack of proper training or deficiency in judg-
ment may be disclosed in cross-examination." *Id.* at
320. Third, confrontation provides the defendant a
chance to question the technician's methodology. *Id.* at
320-321.[7]

---

[5] See also *Lonsby*, 268 Mich App at 391 ("[T]he State Police crime lab
is an arm of law enforcement and the scientists' written analyses are
regularly prepared for and introduced in court.").

[6] See also *Lonsby*, 268 Mich App at 392 ("Moreover, the evidence at
issue was based on [the analyst's] subjective observations and analytic
standards that established a fact critical to proving the alleged
offense.").

[7] See also *Lonsby*, 268 Mich App at 392 ("Because the evidence was
introduced through the testimony of [the analyst's superior], who had no
firsthand knowledge about [the analyst's] observations or analysis of the
physical evidence, defendant was unable, through the crucible of cross-

None of these concerns is present here. The risks of inexperience or incompetence inherent in the forensic analyst's laboratory are not found at the desk of a driving-record administrator. See *State v Murphy*, 991 A2d 35, 42 (Me, 2010) ("The certificates of the Secretary of State, at issue here . . . , do not involve expert analysis or opinion."). The certificates are not made by highly trained experts, who must constantly retrain and refresh their methodologies. If "[c]onfrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well," *Melendez-Diaz*, 557 US at 319, cross-examination will do no such weeding here, as there is little, if any, room for fraud or incompetence in creating certificates of mailing.

Further, there is no risk of bias in the certification and dissemination of hundreds of thousands of state administrative documents, because the state employee charged with that task reports "neutral information"— namely, the fact that a notice of suspended license was sent to a suspended-license holder. *Murphy*, 991 A2d at 42. In this case, that information was all the more neutral because the certificate of mailing was made long before the commission of a crime—and with no advance knowledge that such a crime would take place. At the time F. Bueter created the so-called "testimonial" statement, defendant was simply a record—he was not in the criminal-justice system, as he had committed no crime and thus could not be charged with one. Accordingly, Bueter, and the work product that he certified, cannot be considered a witness against Nunley. See *Shipley*, 757 NW2d at 237.

---

examination, to challenge the objectivity of [the analyst] and the accuracy of her observations and methodology.").

For these reasons, the cross-examination of F. Bueter or his colleagues does not serve the fundamental purpose of the Confrontation Clause: to serve as a vehicle to advance the truth and promote reliability at criminal trials. *Fackelman*, 489 Mich at 528.

### D. PRACTICAL EFFECTS OF MAJORITY OPINION

If called to testify, it is highly unlikely that an administrative employee such as F. Bueter would be able to identify a specific recipient of his mailing. Yet the majority's holding—classifying an administrative document from the Secretary of State as testimonial—will compel the prosecutor to produce such administrative employees from Lansing at every suspended-license trial in the state. Considering the volume of notices and other documents produced by the Secretary of State's office, a state employee cannot conceivably remember signing and certifying a particular notice. The Secretary of State presumably creates identical certificates for any other driver whose license is suspended for any number of reasons, which likely amounts to hundreds of thousands of certificates a year. And, as discussed, there is almost no room for bias or fraud on the employee's part—when a certificate of mailing is created, the hypothetical defendant has not yet committed any crime. If the hypothetical defendant becomes real, the state employee's testimony at trial will reveal nothing, much less offer a substantial benefit to the defendant. Calling such a witness for cross-examination would truly be a "hollow formality" and a waste of judicial resources. *Bullcoming v New Mexico*, 564 US ___; 131 S Ct 2705, 2724; 180 L Ed 2d 610 (2011) (Kennedy, J., dissenting).

### III. CONCLUSION

For the foregoing reasons, I would reverse the ruling of the circuit court, hold that the Secretary of State's certificate of mailing is nontestimonial, and remand the case for further proceedings.